Case 7:15-mj-00312   Document 1   Filed in TXSD on 02/28/15   Page 1 of 5

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

United States District Court
Southern District of Texas
**FILED**
FEB 28 2015
, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. M-15-0312-M |
| See "Attachment A" | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 27, 2015__ in the county of __Hidalgo__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 | Knowingly and intentionally possess with the intent to distribute a controlled substance/approximately 11.985 kilograms of cocaine, a schedule II controlled substance under the Controlled Substance Act. |

This criminal complaint is based on these facts:

See "Attachment B"

☑ Continued on the attached sheet.

_____
Complainant's signature

Derek Lacina Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 02/28/2015

_____
Judge's signature

City and state: McAllen, TX

Dorina Ramos, U.S. Magistrate Judge
*Printed name and title*

Attachment "A"

01 Eduardo Edgar LOPEZ-Cifuentes
Mexican Citizen
YOB: 1996

02 Juan Alfonso CARDONA
United States Citizen
YOB: 1988

03 Josias Obed SANCHEZ-Ordaz
Mexican Citizen
YOB: 1996

Attachment "B"

On February 27, 2015, Homeland Security Investigations, McAllen, TX (HSI McAllen) Special Agents (SAs) initiated surveillance on a silver colored Mazda 3 bearing Tamaulipas, Mexico license plate number 335-TPY-5. The driver of the vehicle was Eduardo Edgar LOPEZ Cifuentes and a female passenger was also in the vehicle.

The surveillance team, which consisted of HSI SAs and Task Force Officers (TFOs) assigned to HSI McAllen, followed the Mazda 3 from Hidalgo, TX to a shopping center located near the intersection of Trenton Road and Highway 281 in Edinburg, TX.  LOPEZ parked the Mazda 3 and exited the vehicle with the female passenger. They subsequently entered the Ross Department Store.  An HSI SA followed afoot and confirmed their presence inside the department store.  At approximately 10:32 a.m., the SA overheard LOPEZ speaking on the phone to another individual.  LOPEZ told the person that he was inside Ross.  LOPEZ immediately went outside, discarding his shopping cart, and went to the area of the Mazda.  LOPEZ then returned to the store.

During this time period, SAs observed a black Honda Civic bearing temporary paper license plates drive in front of the Ross department store and stop to drop off a passenger who subsequently walked towards the area of the parked Mazda 3. The male who was dropped off (later identified as Josias Obed SANCHEZ Ordaz), drove the Mazda 3 out of the shopping center parking lot. SANCHEZ was followed by the black Honda Civic bearing temporary paper license plates. The driver of the Honda Civic was later identified as Juan CARDONA.  The Mazda 3 and Honda Civic traveled in tandem, east bound on Wisconsin Road and arrived at Highway 281 frontage road.  The surveillance team followed both vehicles until they arrived at Bradimi Body Shop located of off Tower Road in Edinburg, TX.

Several unidentified males were seen at the repair shop.  SAs saw the Mazda 3 being driven to an area that was not visible from any of the surrounding streets.  Surveillance continued on the body shop as the surveillance team prepared for a consent to search at the business.  Upon arriving at the body shop, SAs and TFOs identified themselves as law enforcement and obtained consent to search the location.

SAs and TFOs located the Mazda 3 in a secluded area of the body shop.  The passenger side front door was open.  Visible to SAs and TFOs was a wrench and socket left in place over the bolts that attach the front seats to the frame of the vehicle.  SAs and TFOs also noticed that the back seats had been removed.  A K-9 from the Hidalgo County Sheriff's Office conducted a free-air sniff which resulted in a positive alert for the odor of narcotics emanating from the Mazda 3.

During this time, SAs returned to the shopping center where LOPEZ and the passenger were last seen. SAs located them walking outside and identified themselves as law enforcement officers.  LOPEZ was subsequently transported to be interviewed.  During the encounter at the shopping center, LOPEZ stated that female passenger was not involved.

The Mazda 3 was driven to the Hidalgo POE for a non-intrusive inspection utilizing the Vehicle and Cargo Inspection System (VACIS).  U.S. Customs and Border Protection Officers conducting the inspection discovered that anomalies appeared within the front seats of the vehicle.  Upon searching the vehicle,

SAs located 12 packages of a white powdery substance, which field-tested positive for cocaine. The weight of the 12 packages was approximately 11.985 kilograms.

SAs interviewed SANCHEZ who stated that he was being paid approximately $100 dollars today to pick-up the Mazda 3. He stated that CARDONA dropped him off at the store and he drove the Mazda 3 back to the repair shop. He had picked the Mazda 3 up on two or three prior occasions. SANCHEZ stated that he is working for CARDONA and that he has been working for him for approximately one and a half months. He had previously picked up a red colored Ford Explorer approximately a week ago. SANCHEZ stated that he believed the vehicles were loaded with marijuana. He further stated that his fingerprints would be on the tools which were being used to work on the Mazda 3, however he denied attempting to remove the narcotics. SANCHEZ later changed his story and stated the he did not know that narcotics were inside the Mazda 3.

SAs interviewed CARDONA who stated that he had assisted in driving the Mazda 3 back to the repair shop from the Ross department store parking lot earlier that day. He stated that he knew there was cocaine concealed inside the Mazda 3. He was going to be paid approximately $200 dollars to drive the Mazda 3 to the body shop and remove the narcotics. CARDONA stated that he had previously removed narcotics from this Mazda 3 and that SANCHEZ was assisting him in removing the narcotics from the vehicle when SAs arrived at the body shop. CARDONA stated that SANCHEZ is his cousin. CARDONA stated that the other individuals at the body shop did not have any knowledge that he and SANCHEZ were removing narcotics from the vehicle.

SAs interviewed LOPEZ who stated that in November of last year, an individual in Mexico asked if he was interested in making money by crossing a vehicle into the U.S. LOPEZ agreed to do so and began crossing the Mazda 3 into the U.S. He was being paid approximately $800 a trip to drive the Mazda 3 into the U.S. from Mexico. He has driven the Mazda 3 into the U.S. approximately 8 times. On the mornings that he was instructed to cross the Mazda 3 into the U.S., this individual in Mexico would drop the Mazda 3 off at his residence. He would then drive the vehicle into the U.S. and park the vehicle at a parking lot where someone else would pick up the vehicle. Approximately 30 to 40 minutes later, the same individuals would return the vehicle to the parking lot and he would in turn drive the vehicle back to Mexico. LOPEZ stated that the individual in Mexico, who was paying him, titled the Mazda 3 into his name and instructed him to tell CBP officers at the POE that the vehicle belonged to him.

LOPEZ stated that he knows the individual from Mexico whom is paying him to cross the Mazda 3 into the U.S., is involved in drugs.

LOPEZ initially stated that he was only being paid to transport cash from the U.S. into Mexico, which was for the sale of gasoline. LOPEZ stated that he knew transporting cash from Mexico to the U.S. is illegal. HSI SAs asked LOPEZ what would happen to him if he returned to Mexico without being arrested today, he stated that he would probably be killed. SAs asked LOPEZ why he thought he would he be killed if the vehicle was seized before cash was put into the vehicle. LOPEZ took a moment to think and then stated that they would kill him because he lost the vehicle. LOPEZ stated that while he was driving the Mazda 3 into the U.S. on two prior occasions, he observed the same vehicle following him.

While SAs were transporting the Mazda 3 from the repair shop to the POE for inspection, SAs observed that the front seat was very hard. Subsequently, after the cocaine bricks were removed from the front seats, SAs observed that the seats were very soft.

SAs asked LOPEZ if he noticed that the seat was hard when he entered into the U.S. and soft when he drove back to Mexico. He stated that he did. SAs then asked LOPEZ if he knew that drugs would go from Mexico into the U.S. and money would go from the U.S. to Mexico. LOPEZ stated that he knew that to be a fact. LOPEZ subsequently stated that from what agents told him and after thinking about it, he knew he was transporting narcotics into the U.S.